C9l6civp

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                          10 CR 1223(CM)(GWG)

5   DIDI CIULEI and LAURENTIU
    MANTA,
6
                  Defendants.
7
    ------------------------------x
8
                                            New York, N.Y.
9                                           September 21, 2012
                                            2:30 p.m.
10

11  Before:

12                  HON. GABRIEL W. GORENSTEIN,

13                                          Magistrate Judge

14                          APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    ROSEMARY NIDIRY
17       Assistant United States Attorney

18  JAMES KENEALLY, ESQ.
         Attorney for Defendant Ciulei
19
    MARK DeMARCO, ESQ.
20       Attorney for Defendant Manta

21

22

23

24

25

C9l6civp

1              (In open court; case called)

2              THE DEPUTY CLERK:  Counsel please state your name for

3    the record.

4              MS. NIDIRY:  Good morning, your Honor.  Rosemary

5    Nidiry for the government.

6              MR.  KENEALLY:  Good morning, your Honor.  James

7    Keneally of Kelley Dryer Warren LLP on behalf of Mr. Ciulei.

8              MR. DeMARCO:  Mark DeMarco for Mr. Manta, who is

9    seated to my left, your Honor.  Good morning.

10             THE COURT:  Is there an interpreter?

11             THE DEPUTY CLERK:  Yes, sir.

12             THE COURT:  Swear in the interpreter.

13             THE DEPUTY CLERK:  State your name for the record,

14   please.

15             THE INTERPRETER:  Andrew Roa, R-o-a.

16             (Interpreter sworn)

17             THE COURT:  Do you want to use the headphone?

18             THE INTERPRETER:  Thank you, your Honor, but I think I

19   can hear you fine.

20             THE COURT:  Okay.  I have before me a consent to

21   proceed before a United States magistrate judge on a felony

22   plea allocution.  What this says is you are agreeing to have

23   this plea taken by the United States magistrate judge instead

24   of a United States District Judge.

25             Is that correct?

C9l6civp

```
 1                    DEFENDANT CIULEI:  Yes.

 2                    DEFENDANT MANTA:  Yes.

 3                    THE COURT:  I am going to ask the clerk to swear in

 4     the defendants.

 5                    THE DEPUTY CLERK:  Can you state your names for the

 6     record, please.

 7                    DEFENDANT CIULEI:  Didi Ciulei.

 8                    DEFENDANT MANTA:  Laurentiu Manta.

 9                    (Defendants sworn)

10                    THE DEPUTY CLERK:  Thank you.

11                    THE COURT:  I am going to be asking some questions to

12     both of you and then sometimes I will address you separately.

13     For the moment I am asking questions and I would like you each

14     to give an answer.  Mr. Ciulei, first.  Always Mr. Ciulei

15     first.  Mr. Manta second.

16                    Let me ask you, tell me your full name.

17                    DEFENDANT CIULEI:  Didi Ciulei.

18                    DEFENDANT MANTA:  Manta Laurentiu Mugurel.

19                    THE COURT:  Do you each understand that any statements

20     you make here could be used against you in a prosecution for

21     perjury or making false statements?

22                    DEFENDANT CIULEI:  Yes.

23                    DEFENDANT MANTA:  Yes.

24                    THE COURT:  What is your age?

25                    DEFENDANT CIULEI:  36.
```

C9l6civp

1              DEFENDANT MANTA:  And I am 37.

2              THE COURT:  Are you a citizen of the United States?

3              DEFENDANT CIULEI:  No.

4              DEFENDANT MANTA:  No.

5              THE COURT:  Are you able to read and write in English?

6              DEFENDANT CIULEI:  A little bit.

7              DEFENDANT MANTA:  No.

8              THE COURT:  What country are you a citizen of?

9              DEFENDANT CIULEI:  I am Austrian.

10             DEFENDANT MANTA:  I am from Romania.

11             THE COURT:  Are you able to read and write in

12    Romanian?

13             DEFENDANT CIULEI:  Yes.

14             DEFENDANT MANTA:  Yes.

15             THE COURT:  What is the extent of your formal

16    education?

17             DEFENDANT CIULEI:  I finished high school, your Honor.

18             DEFENDANT MANTA:  The same with me.

19             THE COURT:  Are you now or have you recently been

20    under the care of a doctor or psychiatrist for any reason?

21             DEFENDANT CIULEI:  I did see a medical doctor recently

22    because of a back issue.

23             THE INTERPRETER:  And Mr. Manta says, No.

24             THE COURT:  I request to talk to the translator for a

25    second.

C9l6civp

1              (Pause)

2              THE COURT:  Let me ask each you have you ever been

3    hospitalized in the past for mental illness?

4              DEFENDANT CIULEI:  No.

5              DEFENDANT MANTA:  No.

6              THE COURT:  If you can each wait until the other gives

7    an answer.  Once again, Mr. Ciulei needs to speak first.

8    Mr. Manta, can you wait until the interpreter interprets

9    Mr. Ciulei's answer before you give your answer.

10             Do you understand that?

11             DEFENDANT MANTA:  Yes.

12             DEFENDANT CIULEI:  Yes.

13             THE COURT:  Mr. Ciulei will answer, the interpreter

14   will interpret the answer, Mr. Manta will answer, the

15   interpreter will interpret Mr. Manta's answer.

16             Have you ever been hospitalized in the past for

17   alcoholism?

18             DEFENDANT CIULEI:  No.

19             DEFENDANT MANTA:  No.

20             THE COURT:  For narcotics addiction?

21             DEFENDANT CIULEI:  No.

22             DEFENDANT MANTA:  No.

23             THE COURT:  As you sit here today are you under the

24   influence of any drug or alcoholic drink?

25             DEFENDANT CIULEI:  No.

C916civp

```
1              DEFENDANT MANTA:  No.

2              THE COURT:  Have you been able to understand

3    everything that has been said to you today through the

4    interpreter?

5              DEFENDANT CIULEI:  Yes.

6              DEFENDANT MANTA:  Yes.

7              THE COURT:  Are you aware of the indictment in this

8    case, which contains the charges against you?

9              DEFENDANT CIULEI:  Yes.

10             DEFENDANT MANTA:  Yes.

11             THE COURT:  Has it been translated for you?

12             DEFENDANT CIULEI:  Yes.

13             DEFENDANT MANTA:  Yes.

14             THE COURT:  Do you understand what it says you did?

15             DEFENDANT CIULEI:  Yes.

16             DEFENDANT MANTA:  Yes.

17             THE COURT:  Have you had a chance to discuss the

18   charges and how you wish to plead with your attorney?

19             DEFENDANT CIULEI:  Yes.

20             DEFENDANT MANTA:  Yes.

21             THE COURT:  Are you satisfied with your attorney's

22   representation of you?

23             DEFENDANT CIULEI:  Yes.

24             DEFENDANT MANTA:  Yes.

25             THE COURT:  Have you had a full opportunity to discuss
```

C9l6civp

1    this case with him?

2              DEFENDANT CIULEI:  Yes.

3              DEFENDANT MANTA:  Yes.

4              THE COURT:  Are you ready to enter a plea?

5              DEFENDANT CIULEI:  Yes.

6              DEFENDANT MANTA:  Yes.

7              THE COURT:  Count One of the indictment charges you

8    with conspiracy to commit bank fraud.  It is alleged this

9    occurred between March 2010 and May 29th, 2011.

10             Do you understand this charge?

11             DEFENDANT CIULEI:  Yes.

12             DEFENDANT MANTA:  Yes.

13             THE COURT:  How do you wish to plead, guilty or not

14   guilty?

15             DEFENDANT CIULEI:  Guilty.

16             DEFENDANT MANTA:  Guilty.

17             THE COURT:  Count Three of this indictment charges you

18   with conspiracy to commit access device fraud.  Access devices

19   include things like credit card numbers and PIN numbers and

20   passwords.

21             Do you understand this charge?

22             DEFENDANT CIULEI:  Yes.

23             DEFENDANT MANTA:  Yes.

24             THE COURT:  How do you wish to plead, guilty or not

25   guilty?

C9l6civp

1              DEFENDANT CIULEI:  Guilty.

2              DEFENDANT MANTA:  Guilty.

3              THE COURT:  I want you to understand the maximum

4    penalties of these charges.

5              THE INTERPRETER:  I didn't get that, your Honor.

6              THE COURT:  I want you to understand the maximum

7    penalties for these charges.  Count One has a maximum sentence

8    of 30 years' imprisonment, also a maximum fine of one million

9    dollars or twice what was gained because of the offense, or

10   twice what was loss to someone, other than you, because of the

11   offense, also a $100 special assessment and restitution must be

12   ordered.  In addition there is a maximum term of five years'

13   supervised release.

14             Do you understand the maximum penalties I have just

15   described for Count One?

16             DEFENDANT CIULEI:  Yes.

17             DEFENDANT MANTA:  Yes.

18             THE COURT:  Count Three has a maximum sentence of

19   seven and one half years' imprisonment and a maximum term of

20   three years' supervised release.  There is also a fine of the

21   greater of $250,000 or twice what was gained because of the

22   offense or twice what someone other than you lost because of

23   the offense.  There is also a $100 special assessment and

24   restitution must be ordered.

25             Do you understand these maximum penalties?

C9l6civp

```
 1                    DEFENDANT CIULEI:  Yes.

 2                    DEFENDANT MANTA:  Yes.

 3               THE COURT:  If the prison terms ran consecutively, you

 4     would be facing a maximum term of 37 and one half years in

 5     prison.

 6               Do you understand that?

 7               DEFENDANT CIULEI:  Yes, I understand.

 8               DEFENDANT MANTA:  Yes, I understand.

 9               THE COURT:  Do you also understand that if as part of

10     your sentence you are placed on a term of supervised release

11     and then you were to violate any of the conditions of that

12     release, you could face an additional term of imprisonment?

13               DEFENDANT CIULEI:  Yes, I do.

14               DEFENDANT MANTA:  Yes, I understand.

15               THE COURT:  Do you understand that this conviction may

16     have consequences for your ability to remain in the United

17     States?

18               DEFENDANT CIULEI:  Yes, I understand.

19               DEFENDANT MANTA:  Yes, I understand.

20               THE COURT:  Do you understand that your deportation

21     may be mandatory?

22               DEFENDANT CIULEI:  Yes.

23               DEFENDANT MANTA:  Yes, I understand.

24               THE COURT:  Have you discussed these immigration

25     matters with your attorney?
```

C9l6civp

1              DEFENDANT CIULEI:  Yes.

2              DEFENDANT MANTA:  Yes.

3              THE COURT:  Do you understand that you have a right to

4    plead not guilty to these charges and the right to a jury trial

5    if you wish?

6              DEFENDANT CIULEI:  Yes.

7              DEFENDANT MANTA:  Yes.

8              THE COURT:  Do you understand that if you pled not

9    guilty and went to trial, you would be presumed innocent and

10   the burden would be on the government to prove your guilt

11   beyond a reasonable doubt?

12             DEFENDANT CIULEI:  Yes, I understand.

13             DEFENDANT MANTA:  Yes, I do understand.

14             THE COURT:  I want you also to understand that there

15   are a number of other rights that you would have if you pled

16   not guilty and went to trial.  If you went to trial, you would

17   be entitled to be represented by an attorney at all stages of

18   the case.  If you could not afford to hire an attorney, the

19   Court would provide one for you for free.

20             DEFENDANT CIULEI:  Yes, I understand.

21             THE COURT:  At a trial you would be entitled to

22   confront and cross-examine any witnesses called by the

23   government to testify against you.  You would be entitled to

24   testify on your own behalf.  You could call witnesses and

25   present evidence and the Court would issue subpoenas at your

C9l6civp

1    request to compel witnesses to appear.  Also, at a trial you

2    would not be required to testify against yourself.

3            Do you understand the rights I have just described?

4            DEFENDANT CIULEI:  Yes, I do understand.

5            DEFENDANT MANTA:  Yes, I do understand.

6            THE COURT:  Do you understand you will give up all

7    these rights if you plead guilty?

8            DEFENDANT CIULEI:  Yes, I understand.

9            DEFENDANT MANTA:  Yes, I understand.

10           THE COURT:  Do you understand that if you enter a

11   guilty plea you are not going to be able to withdraw this plea

12   and the only remaining step in this case will be the

13   sentencing?

14           DEFENDANT CIULEI:  Yes, I understand.

15           DEFENDANT MANTA:  Yes, I understand.

16           THE COURT:  Do you understand that the decision of

17   what is the appropriate sentence in your case will be entirely

18   up to the judge who sentences you.  She will be limited only by

19   what the law requires.

20           DEFENDANT CIULEI:  Yes, I understand.

21           DEFENDANT MANTA:  Yes, I understand.

22           THE COURT:  Do you understand that even if you are

23   surprised or disappointed by your sentence, you will still be

24   bound by your guilty plea?

25           DEFENDANT CIULEI:  I understand.

C9l6civp

1              DEFENDANT MANTA:  I understand.

2              THE COURT:  Knowing all this, do you still wish to

3    plead guilty to Counts One and Three of the indictment?

4              DEFENDANT CIULEI:  Yes.

5              DEFENDANT MANTA:  Yes.

6              THE COURT:  Have any force or threats been used either

7    directly or indirectly to influence how you plead today?

8              DEFENDANT CIULEI:  No.

9              DEFENDANT MANTA:  No.

10             THE COURT:  I have before me a letter containing the

11   plea agreements dated August 9th from the government to each of

12   your attorneys.  Let me first ask if this letter was translated

13   for you?

14             DEFENDANT CIULEI:  No.

15             DEFENDANT MANTA:  Yes.

16             THE COURT:  Mr. Keneally?

17             MR.  KENEALLY:  Yes, your Honor.

18             THE COURT:  The letter has not been translated?

19             MR.  KENEALLY:  It was not translated, your Honor.

20   Mr. Ciulei was able to read the letter and he and I spent many

21   hours going over each and every item in the letter.

22             THE COURT:  Did you use an interpreter.

23             MR.  KENEALLY:  We did not.  We conversed solely in

24   English in our attorney-client conversations.

25             THE COURT:  Mr. Ciulei, were you able to read this

C9l6civp

1   letter in English?

2            DEFENDANT CIULEI:  Yes.

3            THE COURT:  Did you understand the letter in its

4   entirety?

5            DEFENDANT CIULEI:  Yes.

6            THE COURT:  Did you discuss it with your attorney?

7            DEFENDANT CIULEI:  Yes.

8            THE COURT:  Did you discuss it in English with your

9   attorney?

10           DEFENDANT CIULEI:  Yes.

11           THE COURT:  Did he explain to you all of its terms and

12   conditions?

13           DEFENDANT CIULEI:  Yes.

14           THE COURT:  Did you discuss each of the terms and

15   conditions?

16           DEFENDANT CIULEI:  Yes.

17           THE COURT:  Mr. Manta, did you discuss this letter

18   with your attorney?

19           MR. DeMARCO:  Your Honor, I proceeded the same way

20   with Mr. Manta.  We were able to converse in English.  I spent

21   many hours reviewing with him, previewing the previously

22   entered plea agreement in English.  He is able to read it.  He

23   understood everything that I said to him.  He is just more

24   comfortable in the courtroom setting when his nerves may get

25   the best of him with an interpreter.

C9l6civp

1          THE COURT:  Sir, did you read this agreement in

2     English?

3          DEFENDANT MANTA:  Yes.

4          THE COURT:  Did you discuss it with your attorney in

5     English?

6          DEFENDANT MANTA:  Yes.

7          THE COURT:  When you read the letter, did you

8     understand all the words in it?

9          DEFENDANT MANTA:  Yes.

10          THE COURT:  Did you discuss each of the terms and

11     conditions with your attorney?

12          DEFENDANT MANTA:  Yes.

13          THE COURT:  Let me confirm, Mr. Ciulei, did you sign

14     the agreement on the last page?

15          DEFENDANT CIULEI:  Yes.

16          THE COURT:  Mr. Manta, did you sign it on the last

17     page?

18          DEFENDANT MANTA:  Yes.

19          THE COURT:  Apart from what is contained in this

20     letter, have any promises been made to you in order to get you

21     to plead guilty?

22          THE INTERPRETER:  Your Honor, can you repeat, please?

23          THE COURT:  Apart from what is contained in this

24     letter, have any promises been made to you in order to get you

25     to plead guilty?

C9l6civp

1            DEFENDANT CIULEI:  No.

2            DEFENDANT MANTA:  No.

3            THE COURT:  Addressing Mr. Ciulei, in reviewing this

4    agreement, I see it contains an analysis of how part of our law

5    of sentencing known as the Sentencing Guidelines may affect any

6    prison term in your case.  Based on that analysis, the

7    agreement states the conclusion that the guidelines sentencing

8    range to be expected to be between 51 and 63 months.

9            THE INTERPRETER:  I am sorry, your Honor 51?

10           THE COURT:  And 63 months.

11           Do you understand this?

12           DEFENDANT CIULEI:  Yes.

13           THE COURT:  Addressing Mr. Manta, the analysis in the

14   agreement states that the sentencing guidelines range can be

15   expected to be between 41 and 51 months.

16           Do you understand this?

17           DEFENDANT MANTA:  Yes.

18           THE COURT:  Do you each understand that the judge who

19   sentences you is not bound by the calculation in this letter

20   and she can do her own calculation, which could result in a

21   different guideline range?

22           DEFENDANT CIULEI:  Yes, I understand.

23           DEFENDANT MANTA:  Yes.

24           THE COURT:  Do you understand that no matter what

25   range she thinks is called for by the guidelines, that range is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C916civp

1   just one of the factors that the judge will consider in

2   determining your sentence and the judge has discretion to give

3   you a sentence below or above the range anywhere up to the

4   maximum sentences of imprisonment I told you about earlier.

5           Do you understand?

6           DEFENDANT CIULEI:  Yes, I understand.

7           DEFENDANT MANTA:  Yes, I understand.

8           THE COURT:  Let me address, Mr. Ciulei.  Do you

9   understand that under the terms of this agreement, if you

10  receive a sentence of 63 months or less, you are giving up your

11  right to appeal that sentence or to challenge it in any other

12  way such as through a writ of habeas corpus?

13          DEFENDANT CIULEI:  Yes, I understand.

14          THE COURT:  Mr. Manta, do you understand under this

15  agreement if you get a sentence of 51 months or less, you are

16  giving up your right to appeal that sentence or to challenge it

17  in any other way such as through a writ of habeas corpus; do

18  you understand?

19          DEFENDANT MANTA:  Yes, I understand.

20          THE COURT:  Is your plea voluntary, that is made of

21  your own free will?

22          DEFENDANT CIULEI:  Yes.

23          DEFENDANT MANTA:  Yes.

24          THE COURT:  Did you in fact commit the offenses that

25  are charged in Counts One and Three of the indictment?

C9l6civp

1            DEFENDANT CIULEI:  Yes.

2            DEFENDANT MANTA:  Yes.

3            THE COURT:  Before I will ask each of you to tell me

4    what you did, I am going to ask the government to summarize the

5    elements of offenses and if they wish to tell me any evidence

6    it would have offered at trial.

7            MS. NIDIRY:  With regard to Count One, the charge is

8    conspiracy commit bank fraud, the elements of conspiracy, which

9    applies to both counts actually, is that there was an agreement

10   between two or more persons, an unlawful agreement, in this

11   case on Count One with the object of committing bank fraud and

12   in Count Three of committing access device fraudful; second,

13   that the defendant knowingly and willfully became a member of

14   that unlawful agreement; and third, that one of the members, at

15   least one of the members of the conspiracy knowingly committed

16   at least one overt act in furtherance of the conspiracy in the

17   Southern District of New York.

18           The elements of bank fraud with regard to the object

19   of Count One, first there was a scheme to defraud a bank or

20   obtain money or funds owned or under the custody or control of

21   a bank by means of material, false or fraudulent pretenses;

22   second, that the defendants executed or attempted to execute

23   the scheme with that intent; and third that at the time of the

24   execution of the scheme, the bank had its deposits ensured by

25   the FDIC.  Then with regard to Count One --

C9l6civp

1         THE COURT:  Count Three.  Are you still on Count One?

2         MS. NIDIRY:  Yes, Count One.

3         That these defendants joined in a conspiracy

4    themselves with at least two others to place skimming devices

5    on PIN pads at teller stations at Citibank and Chase branches

6    in Miami, Chicago as well as Manhattan and through these

7    skimming devices -- first both on the teller pads and also on

8    the card readers outside the ATM machines that through these

9    skimmer devices they were able to steal ATM PIN codes and they

10   used to that information to steal over one million dollars from

11   the bank accounts, that the victim banks included bank branches

12   in Manhattan of Chase and Citibank and that both of those banks

13   are FDIC ensured.

14         With regard to Count Three, the object of that

15   conspiracy is access device fraud.  With regard to that, the

16   elements of that access device fraud as set forth in the

17   indictment are first that the defendants trafficked in --

18   agreed to traffic in or used one or more unauthorized access

19   devices during any one-year period and by such conduct obtained

20   anything of value aggregating $1,000 or more during that

21   period, that the defendants.

22         THE INTERPRETER:  Excuse me.  How much did you say?

23         MS. NIDIRY:  $1,000 or more.

24         That the defendants possessed -- agreed to possess 15

25   or more devices, which are counterfeit or unauthorized access

C9l6civp

1    devices and that they affected transactions with those devices

2    equal to obtain money equal to or greater than $1,000.

3              And then as a legal matter the government would

4    proffer that bank account information, individual identifying

5    bank information, and PIN information are together or

6    separately access devices under the statute.

7              In connection with this count as stated before, the

8    defendants placed these skimming devices on banks in Manhattan,

9    as well as in Miami and Chicago and through that they stole

10   bank account information and card user account informations and

11   PIN codes including for at least 15 accounts and the conspiracy

12   stole over one million dollars so it meets the $1,000 threshold

13   within a one-year period.  The conspiracy existed between

14   March 2010 and May 2011.

15             And the government would be able to prove that the

16   defendants are guilty of these charges through the following

17   evidence:  Bank video surveillance, agent surveillance,

18   postarrest statements.

19             THE INTERPRETER:  I didn't get it.

20             MS. NIDIRY:  Postarrest statements.

21             THE COURT:  After the arrest.

22             MS. NIDIRY:  Recordings, coconspirator testimony, and

23   items seized from the defendants' vehicle, apartments and hotel

24   room, that includes skimming materials and records including

25   phone records, airline records, rental car records and bank

C9l6civp

1     records.

2           THE COURT:  Mr. Ciulei, please tell me what it is that

3     you did that makes you guilty of this offense.

4           DEFENDANT CIULEI:  Your Honor, during 2010 and 2011 I

5     was part of the conspiracy to make unauthorized withdrawals

6     from bank accounts at JP Morgan Chase and Citibank.  I was a

7     member of the conspiracy that would install devices that record

8     account information from the bank cards which the conspirators

9     could use them --

10          THE COURT:  Conspirators could?

11          DEFENDANT CIULEI:  Could access money from those

12    accounts.

13          I met with the coconspirators in New York City and

14    Miami to discuss the workings and status of our plan.  I also

15    attempted to install the devices in bank branches in Chicago in

16    furtherance of this plan.  I am sorry for my actions and for

17    the pain that I cause my wife and my son.

18          THE COURT:  Sir, I saw you were reading from a

19    statement.  Is that statement 100 percent accurate?

20          DEFENDANT CIULEI:  Yes.

21          THE COURT:  That is actually what happened, sir?

22          DEFENDANT CIULEI:  Yeah.

23          THE COURT:  If I understood you, did you say you

24    attempted to install skimming devices or you actually installed

25    them?

C9l6civp

1            DEFENDANT CIULEI:  Attempted.

2            THE COURT:  Attempted.

3            As part of this plan was the group able to obtain

4    information, PIN information on more than 15 bank accounts?

5            DEFENDANT CIULEI:  Yes.

6            THE COURT:  Did it yield more than a thousand dollars

7    within a one-year period?

8            DEFENDANT CIULEI:  Yes.

9            THE COURT:  Were some of the banks in Manhattan?

10           DEFENDANT CIULEI:  Excuse me, your Honor?

11           THE COURT:  Some of the banks were in Manhattan?

12           DEFENDANT CIULEI:  Yes.

13           THE COURT:  I forget what your banking proffer is.

14    Some banks are in Manhattan?

15           MS. NIDIRY:  Yes.

16           THE COURT:  Anything else the government wants me to

17    ask?

18           MS. NIDIRY:  I don't recall if he mentioned about the

19    15 or more.

20           THE COURT:  Yes, I asked him.

21           MS. NIDIRY:  Okay.

22           THE COURT:  Nothing else?

23           MS. NIDIRY:  The government would proffer that

24    coconspirators did successfully install devices in addition to

25    attempts to install devices.

C9l6civp

1          THE COURT:  Anything else from counsel I should ask?

2          MR.  KENEALLY:  No, your Honor.

3          THE COURT:  Mr. Manta, can you tell me what it is that

4   makes you guilty of these charges?

5          DEFENDANT MANTA:  In the year 2010 to 2011 I was part

6   of a conspiracy that had an aim to steal information of bank

7   accounts belonging to the Chase Bank and the Citibank, which

8   means the members of this conspiracy were installing devices in

9   the -- and they would register the information on these devices

10  from the debit cards.  Later on the information stolen from the

11  debit cards would be used to withdraw moneys from the

12  corresponding account.

13          During this period of time, I met several times with

14  several coconspirators in Miami and in New York and Chicago in

15  order to discuss the modus operandi.  I assisted other members

16  of the conspiracy to install these devices, which were meant to

17  steal the information, the bank information from the cards in

18  Chicago.  I was aware that the stealing of these bank account

19  information and also the installation of the devices was an

20  illegal act.

21          THE COURT:  Sir, it looked like you were reading from

22  a statement.  Is that correct?

23          DEFENDANT MANTA:  Yes.

24          THE COURT:  Is everything that you just said

25  100 percent accurate?

C9l6civp

1          DEFENDANT MANTA:  Yes.

2          THE COURT:  Was it a part of this plan that

3   information on those 15 accounts would be stolen?

4          DEFENDANT MANTA:  Yes.

5          THE COURT:  Was more than $1,000 taken in a one-year

6   period?

7          DEFENDANT MANTA:  Yes.

8          THE COURT:  When you met with people in New York was

9   that in Manhattan or the Bronx?

10          DEFENDANT MANTA:  In Manhattan.

11          THE COURT:  This was in 2010 and 2011, sir?

12          DEFENDANT MANTA:  Yes.

13          THE COURT:  Anything else the government wants me to

14   ask?

15          MS. NIDIRY:  I think that's sufficient, your Honor.

16          THE COURT:  Defense counsel?

17          MR. DeMARCO:  No, thank you.

18          THE COURT:  On the basis of the defendants' responses

19   to my questions and my observation of their demeanor, I find

20   that both, that is, Didi Theodor Ciulei, A/K/A "Spirel," and

21   Laurentiu Mugual Manta, A/K/A "Mugur," is each fully competent

22   to enter an informed plea at this time.  I also conclude that

23   each understands the nature of the charges and the consequences

24   of their pleas.

25          Finally, I am satisfied that the pleas are voluntary

C9l6civp

1    and that there is a factual basis for each of them.

2    Accordingly, I recommend the proffered pleas to Counts One and

3    Three of the indictment be accepted.    Presentence investigation

4    is ordered.

5              Is there a sentencing date?

6              MS. NIDIRY:  One additional matter.

7              THE COURT:  Yes.

8              MS. NIDIRY:  There is a forfeiture allegation in each

9    plea agreement and I just want to make sure the defendants

10   admit to the forfeiture allegations.  It is on page 2.

11             THE COURT:  Let me ask each of you if you are agreeing

12   to forfeit to the United States any money that resulted from

13   the charges to which you just plead.

14             DEFENDANT CIULEI:  Yes.

15             DEFENDANT MANTA:  Yes.

16             THE COURT:  Anything else from the government?

17             MS. NIDIRY:  No, your Honor.

18             THE COURT:  Defense counsel?

19             MR.  KENEALLY:  No, your Honor.  Thank you.

20             MR. DeMARCO:  No.  Thank you, your Honor.

21             THE COURT:  Thank you.

22                              o0o

23

24

25